NATHAN B. CAMUTI (SBN 300568)
nate@camutilaw.com
ANDREW R. COWAN (SBN 356310)
andrew@camutilaw.com
CAMUTI LAW GROUP, APC
33 Brookline
Aliso Viejo, CA 92656
Telephone: 949.716.5565

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DINK AND VOLLEY GP, a California general partnership,<br><br>Plaintiff,<br><br>v.<br><br>DINK AND VOLLEY PICKLEBALL, LLC, an Alabama limited liability company; DEIRDRE HILL, an individual; and DOES 1 through 10, INCLUSIVE;<br><br>Defendants. | Case No.: 8:25-cv-00808<br><br>**DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Date: To Be Determined<br>Time: To Be Determined<br>Courtroom: To Be Determined |

Plaintiff Dink and Volley GP ("Plaintiff") hereby applies for a temporary restraining order and an order to show cause why a preliminary injunction should not issue against Defendants Dink and Volley Pickleball, LLC ("D&VP") and Deirdre Hill ("Hill") (collectively, "Defendants") to ensure that Defendants do not continue infringing on Plaintiff's trademarks during the pendency of this action.

Plaintiff specifically requests an order restraining and enjoining Defendants, their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with Defendants from producing, selling, offering for sale, distributing, advertising, providing, or promoting any products, goods, or services incorporating Plaintiff's trademarks, or that so resemble Plaintiff's trademarks as to be likely to cause confusion, mistake, or deception.

This matter is urgent because Plaintiff is rapidly losing customers due to Defendants' deception and receiving complaints from customers regarding orders placed with Defendants. Those complaining customers wrongfully believed that they were receiving their products, goods, and services from Plaintiff when they were from Defendants' inferior business. Plaintiff first learned that its customers were being diverted in April of 2024 when Plaintiff sponsored a pickleball tournament at which Defendants' infringing marks were displayed instead of Plaintiff's. After investigation and further confusion regarding the association of Defendants' goods and services with Plaintiff's goods and services, Plaintiff sent Defendants a letter demanding they cease and desist their infringement on November 20, 2024. Once Defendants refused to cease their infringing conduct after Plaintiff sent a second letter on February 5, 2025, Plaintiff filed a complaint on April 18, 2025, and concurrently moved for this restraining order, not long after Defendants clearly refused to cease and desist their infringement.

This Application is made on the following grounds:

(1) Plaintiff has a substantial likelihood of success on the merits of its claims against Defendants for trademark infringement, all based on Plaintiff's

- 1 -

DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

federal trademark registrations for Plaintiff's "DINK AND VOLLEY" marks and Defendants' advertising, offering for sale, sale or other distribution of products, goods, and services that infringe Plaintiff's intellectual property rights.

(2) Plaintiff will suffer irreparable injury in the absence of a preliminary injunction because Defendants' infringement has and will continue to tarnish Plaintiff's goodwill by deceiving customers into believing that they are purchasing pickleball apparel and associated goods and services from Plaintiff when they are really purchasing inferior products, goods, and services from Defendants, which is of immediate concern due to the evidence of actual and continuing confusion of consumers and diversion of customers.

(3) The balance of hardships weighs decidedly in Plaintiff's favor, as Plaintiff is already losing and will continue to lose brand goodwill with the public who continues to be deceived into purchasing the infringing products, services, and goods from Defendants.

(4) The public interest strongly favors the issuance of a preliminary injunction in these circumstances, as Defendants' entire business model runs contrary to the public interest by misappropriating the goodwill and reputation of a federally trademarked brand through broad advertising in interstate commerce and by purposefully creating and profiting from consumer confusion.

WHEREFORE, Plaintiffs respectfully request that the Court enter a Temporary Restraining Order, pending hearing on an Order to Show Cause, enjoining Defendants and all those under their direction or control or in active concert or participation with them, their respective suppliers, vendors, licensors, licensees, successors and assigns and the officers, directors, employees, agents and representative thereof, from: (a) producing, selling, offering for sale, distributing, advertising, providing, or promoting any infringing products, goods, or services that

- 2 -

DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

in any way utilize, incorporate, or reflect Plaintiffs' trademarks, or any marks confusingly similar thereto; and (b) using any word, term, symbol, or any combination thereof, or any false designation of origin, false or misleading description of fact, which in commercial advertising or promotion misrepresents the origin, sponsorship, or affiliation of Defendants' products, goods, or services.

Plaintiff further requests that the Court enter an Order to Show Cause for Issuance of a Preliminary Injunction, directing Defendants to show why a preliminary injunction should not issue enjoining Defendants during the pendency of this action from engaging in any of the acts above.

Plaintiff provided notice of this Application to Defendants' counsel by electronic mail and first-class mail on April 18, 2025. Furthermore, Defendants have refused to stop using Plaintiff's trademarks or marks confusingly similar thereto on their website and social media sites, and in conjunction with their products, goods, and services, despite notice of Plaintiff's claims and intent to file a temporary restraining order.

///

///

///

DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

This Application is made pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1 and is based on the accompanying Memorandum of Points and Authorities, the accompanying declarations of Megan Condon and Andrew R. Cowan and the exhibits attached to those declarations, and the accompanying Proposed Order.

Dated:  April 18, 2025

By:  /s/ Andrew Robert Cowan
Andrew R. Cowan, Esq.
CAMUTI LAW GROUP APC
33 Brookline
Aliso Viejo, CA 92656
andrew@camutilaw.com
Telephone: 949.716.5565

*Attorneys for Plaintiff*

- 4 -

# TABLE OF CONTENTS

I.   INTRODUCTION ..............................................................................................7

II.   STATEMENT OF FACTS................................................................................8

   A.   Plaintiff and its Trademarks ................................................................8

   B.   Defendants' Unlawful Infringement.....................................................9

III.   ARGUMENT....................................................................................................11

   A.   Plaintiff Will Suffer Irreparable Harm if an Injunction is Not Granted.......11

   B.   Plaintiff is Likely to Prevail on the Merits of its Trademark Infringement Claim...............................................................................................11

     1.   Plaintiff's Trademarks are Valid, Protectable, and Properly Owned by Plaintiff ........................................................................12

     2.   Defendants are Using Plaintiff's Trademarks in a Manner That has Caused Confusion Among Ordinary Consumers ................................12

   C.   The Balance of Hardships Favors Granting This Application ....................13

   D.   Public Interest Favors an Injunction...............................................14

IV.   CONCLUSION................................................................................................15

DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF AUTHORITIES

**Cases**

*AMF Incorporated v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979) .....11

*AT & T Corp. v. Vision One Sec. Sys.*, No. 95–0565–IEG (BTM), 1995 WL 476251, *7 (S.D.Cal. July 27, 1995) ...................................................................13

*Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc*., 109 F.3d 1394, 1397 fn. 1 (9th Cir. 1997 ...................................................................................................................12

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010....................................................................................10

*Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir.2009) ......................................................................................13

*Kelly v. Primco Mgmt., Inc.*, No. CV1407263BROSHX, 2015 WL 10990368, at *16 (C.D. Cal. Jan. 12, 2015) ....................................................................................12

*Warner Bros., Entmn't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011) ...........................................................................................................................10

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008)...................................10

**Statutes**

15 U.S.C. § 1125(a)(1)-(a)(1)(A) ................................................................................11

**Other Authorities**

Ninth Circuit, *Manual of Model Civil Jury Instrs.* (2022) .......................................10

- 6 -

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendants Dink and Volley Pickleball, LLC ("D&VP") and Deirdre Hill ("Hill") (collectively, "Defendants") advertise and sell pickleball products, both online and through other means including retail stores. Plaintiff Dink and Volley GP ("Plaintiff") is in effectively the same business, selling pickleball products through an online presence including its own online sales platform. Effectively, Defendants and Plaintiffs are direct competitors, offering highly related goods to the same class of consumers through the same channels of commerce. Plaintiff owns two federal trademark registrations for the "DINK AND VOLLEY" trademarks ("Plaintiff's Marks"), and expends significant time, effort, and expense in advertising and offering quality products under Plaintiff's Marks.

Defendants' infringement on Plaintiff's trademarks was realized on in April of 2024 when Plaintiff's general partners sponsored and attended a pickleball tournament, where they also were vendors. At that tournament, Plaintiff's partners quickly realized that Defendant's infringing mark was mistakenly displayed instead of Plaintiff's. After speaking with tournament and tour organizers, Plaintiff recognized that the likeness of Defendants' infringing mark to Plaintiff's Marks was causing significant confusion among consumers and affiliated third parties alike. The likeness between Plaintiff's Marks and Defendants' infringing presence is so similar that customers, third parties, and even Google are confused about the difference between the two businesses.

***The harm Defendants' infringement has caused to Plaintiff continues.***

Plaintiff has recently learned that customers in the community have mistakenly gone to Defendants for pickleball associated merchandise, believing that they were ordering from Plaintiff. Plaintiff has also received confusion from contracted parties working with Plaintiff, confusingly linking to Defendants' web presence instead of Plaintiff's. If Defendants are not stopped, Plaintiff's business

- 7 -

will be devastated beyond the substantial harm Defendants have already caused it.

Defendants' infringement has also resulted in at least one negative comment from a confused customer, evidencing the harm that Defendants have caused and continue to cause to Plaintiff's reputation to consumers.

Defendants have no legally enforceable right to do this—they have no license to use or ownership of Plaintiff's Marks. Plaintiff made repeated attempts to explain this to Defendants and their counsel, but were met with fervent opposition, claiming that Defendants would not cease to utilize the infringing marks, without providing any evidence of Defendants' legal right to use Plaintiff's Marks or marks confusingly similar thereto in interstate commerce. (Decl. of Andrew R. Cowan ("Cowan Decl.") ¶¶ 9-10, Ex. 1.) That Defendants have not ceased their use despite Plaintiff's claims only supports the value of Plaintiff's trademarks.

Accordingly, Plaintiff requires the Court to immediately enjoin Defendants from their infringing conduct and respectfully requests that the Court grant its Application for a Temporary Restraining Order.

## II. STATEMENT OF FACTS

### A. Plaintiff and its Trademarks

Plaintiff filed for its federal trademark registrations on June 19, 2023, and has been continuously using the marks in commerce since March 1, 2024, operating as a pickleball apparel shop under the name "Dink and Volley." (Decl. of Megan Condon ("Condon Decl.") ¶ 3)

Plaintiff is actively using its mark in commerce. Plaintiff's customers associate Plaintiff's business with the "Dink and Volley" trademark and have been doing so since shortly after Plaintiff initiated its use in commerce through Plaintiff's efforts in marketing Plaintiff's trademarks, as well as through sponsoring, attending, and vending at pickleball tournaments. Plaintiff also maintains a successful online presence through social media and its webstore, through which Plaintiff markets Plaintiff's goods and services.

- 8 -

Plaintiff actively uses and markets its products with both the "DINK AND VOLLEY" wordmark as well as with its "DINK AND VOLLEY" logo. (Condon Decl. ¶ 5.) Plaintiff uses its trademark name and logo at its in person sales appearances at pickleball tournaments throughout California and the United States. (*Id.* ¶ 6.) Plaintiff also conducts sales online through its website at www.shopdinkandvolley.com, and Plaintiff additionally owns numerous other domains that redirect to Plaintiff's website, including dinkandvolleypickleball.net; dinkandvolley.org; dinkandvolley.net; dinkandvolleypickleball.org; dinkandvolleyshop.com; and dinkandvolleyshop.net. (*Id.* ¶ 8.) Through its website, Plaintiff sells its products to both local customers and to customers outside of the State of California who wish to have pickleball apparel and other related goods delivered to their location. (*Id.* ¶ 9.) Plaintiff also has a presence on Instagram @dinkandvolley and Facebook at facebook.com/DinkAndVolley/, where it also uses its trademark name and logo to advertise its products, goods, and services. (*Id.* ¶ 10.) Plaintiff has earned an impeccable reputation for itself over the year of its operation by offering high quality products and excellent customer service. (*Id.* ¶ 11.)

**B. Defendants' Unlawful Infringement**

According to Secretary of State records, Defendants began operating on or about June 15, 2023, when Defendants registered "Dink and Volley Pickleball, LLC" with the Alabama Secretary of State. (Cowan Decl. ¶ 3, Ex. 2.) Plaintiff's partners initiated their business preparations at least as early as March 31, 2023. (Condon Decl. ¶ 3.) In or around October of 2023, Defendants began operating as a store selling pickleball goods and associated products, providing the same types of products, goods, and services as Plaintiff, namely pickleball related apparel, under the name "Dink and Volley Pickleball." (Cowan Decl. ¶ 6, Ex. 3.)  "Dink and Volley Pickleball" is practically indistinguishable from Plaintiff's trademark "Dink and Volley." Defendants operate their website, utilizing it in the advertising and

selling of their products, goods, and services, at www.dinkandvolleypickleball.com. (*Id.* ¶ 4.)

Publicly available information online also appears to reflect that Defendants established their online presence on Instagram @dinkandvolleypickleball on July 19, 2023, and on Facebook on or around June 22, 2023. (*Id.* ¶ 5.)

As reflected in the exhibits, Defendants' website, Instagram, and Facebook displayed or are currently displaying images and name usage that infringe upon the Plaintiff's trademarks.

Defendants' infringing name is so similar to Plaintiff's trademarks that, when a search is performed for "dink and volley" using Google, Defendants and Plaintiff appear side by side—Plaintiff's general partners are even displayed in association with Defendants' store. (*Id.* ¶ 7, Ex. 4.) When a Google search is performed for "dink and volley apparel," Defendants' and Plaintiff's products and services are displayed confusingly intermixed. (*Id.* ¶ 8, Ex. 5)

Defendants have no right, license, or authorization to utilize Plaintiff's trademarks as they have been and are currently using them. (Condon Decl. ¶ 13.)

Over the span of April 17-21, 2024, Plaintiff discovered that a pickleball tournament Plaintiff sponsored and was present at as a vendor mistakenly displayed Defendants' infringing trademarks instead of Plaintiff's trademarks. (*Id.* ¶ 14.) Tournament organizers acknowledged the mistake and took steps to rectify the issue, but the damage to Plaintiff's goodwill was already done. (*Id.* ¶ 15.)

In at least two other instances, Plaintiff experienced actual confusion between Defendants' infringing marks and Plaintiff's trademarks. In one instance Plaintiff's marketing company mistook Defendants' website for Plaintiff's. (*Id.* ¶ 16, Ex. 1.)  In another, a customer contacted Plaintiff in confusion after purchasing products from Defendants. (*Id.* ¶ 17, Ex. 2.)

Defendants' blatant and willful infringement continues to harm Plaintiff as Plaintiff is likely to continue receiving inquiries from confused and upset customers

and experiencing diversion of sales unless Defendants are restrained and enjoined from continuing their behavior.

## III.   ARGUMENT

This Court should enter a temporary restraining order against Defendants because: (1) Plaintiff is likely to be successful on the merits; (2) Plaintiff will likely suffer irreparable harm in the absence of preliminary relief; (3) the balance of hardships favors Plaintiff; and (4) an injunction would be in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Warner Bros., Entmn't, Inc. v. WTV Sys., Inc.*, 824 F. Supp. 2d 1003 (C.D. Cal. 2011). A temporary restraining order should issue under this standard for the reasons detailed below.

### A. Plaintiff Will Suffer Irreparable Harm if an Injunction is Not Granted

Defendants are diverting Plaintiff's customers to their competing business by essentially posing as Plaintiff in using Plaintiff's trademarks. (*See, e.g.,* Condon Decl. ¶¶ 14-17, Cowan Decl. ¶¶ 4-8) Plaintiff has already lost customers to Defendants and has received evidence of actual confusion due to Defendants' infringement. (*See* Condon Decl. ¶¶ 14-17.) To make matters worse, despite offering the same kind of products and services as Plaintiff, Defendants' products and services are poor quality or inferior. (*See id.* ¶¶ 17-18.) Thus, Plaintiff is also incurring substantial harm to its reputation and the goodwill it has spent money and time building in the market.

### B. Plaintiff is Likely to Prevail on the Merits of its Trademark Infringement Claim

To prevail on its claim of trademark infringement, Plaintiff must prove that (1) its name and logo are a valid, protectable trademark; (2) that it owns its name and logo as a trademark; and (3) that Defendants used its trademarks, or a mark similar to its trademark, without the consent of Plaintiff "in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship,

- 11 -

affiliation, or approval of the goods." Ninth Circuit, *Manual of Model Civil Jury Instrs.*, 15.6 (2022); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1030 (9th Cir. 2010) ("To prove infringement, a trademark holder must show that the defendant's use of its trademark 'is likely to cause confusion, or to cause mistake, or to deceive.'") (quoting 15 U.S.C. § 1125(a)(1)-(a)(1)(A)).

### 1. *Plaintiff's Trademarks are Valid, Protectable, and Properly Owned by Plaintiff*

Plaintiff owns valid and protectable federal trademark registrations for the "DINK AND VOLLEY" marks. (Condon Decl. ¶ 5) Plaintiff is the sole owner of its marks, and Plaintiff has never agreed to or provided Defendants, or any other individual or entity, with a license or any other enforceable right to use its trademarks in the manner that Defendants are currently using them. (*Id.* ¶ 13.)

### 2. *Defendants are Using Plaintiff's Trademarks in a Manner That has Caused and Will Cause Confusion Among Ordinary Consumers*

*AMF Incorporated v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979) lists eight factors considered relevant in determining the likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendants' intent in selecting the mark; and (8) likelihood of expansion of the product lines.

Application of these facts readily demonstrates the existence of actual confusion, exceeding the requirement that Plaintiff establish probable confusion. Defendants have targeted the exact markets served by Plaintiff, selling the same kind of products, goods, and services, using a name and logo that are nearly indistinguishable from Plaintiff's trademarks. (*See, e.g.,* Condon Decl. ¶¶ 14-19;

- 12 -

Cowan Decl. ¶¶ 4-8.) Defendants also use the same marketing channels as Plaintiff, advertising in interstate commerce through the internet. (*See* Condon Decl. ¶ 19.) Purchasers have already been confused by Defendants infringement, coming to Plaintiff believing that they placed orders with Plaintiff, when their orders were with Defendants. (*See, e.g., id.* ¶ 17.) Other third parties have also expressed instances of actual confusion. (*See id.* ¶¶ 14-16.)

There is no question that Defendants have used Plaintiff's mark in a manner causing actual confusion. Thus, Plaintiff is likely to succeed on the merits of its claim for trademark infringement, supporting entry of the injunctive relief sought herein.

**C. The Balance of Hardships Favors Granting This Application**

"To obtain a preliminary injunction, the moving party must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. These formulations are not different tests but represent two points on a sliding scale in which the degree of irreparable harm increases as the probability of success on the merits decreases. Under either formulation, the moving party must demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1397 fn. 1 (9th Cir. 1997). "A court balancing the equities will look to the possible harm that might befall the various parties." *Kelly v. Primco Mgmt., Inc.*, No. CV1407263BROSHX, 2015 WL 10990368, at *16 (C.D. Cal. Jan. 12, 2015). Where a defendant may merely lose profits by not being able to exploit the plaintiff's intellectual property, the balance of the hardships "weighs heavily in favor of granting a preliminary injunction." *Id.*

The hardship to Plaintiff, should injunctive relief sought herein be denied, will be substantial, while the harm to Defendants, should injunctive relief be granted, will be negligible. As detailed above, not only are Plaintiff's customers

- 13 -

being diverted to Defendants, Plaintiff's goodwill and reputation, which was established through its marketing and use of its marks in the market, is being damaged. Meanwhile, Defendants' only harm will be their loss of profits from not being able to exploit Plaintiff's marks. Thus, this factor supports entry of injunctive relief.

### D. Public Interest Favors an Injunction

In trademark infringement cases, the public interest is "the right of the public not to be deceived or confused." *AT & T Corp. v. Vision One Sec. Sys.*, No. 95–0565–IEG (BTM), 1995 WL 476251, *7 (S.D.Cal. July 27, 1995) (citation omitted). "Where defendant's concurrent use of plaintiff's trademark without authorization is likely to cause confusion, the public interest is damaged by the defendant's use." *Id.*; s*ee also Internet Specialties West, Inc. v. Milon–DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 n. 5 (9th Cir.2009) ("The public has an interest in avoiding confusion between two companies' products").

As detailed above, there has already been actual public confusion caused by Defendants' infringing use of Plaintiff's trademarks. Thus, this element supports entry of the injunctive relief sought herein.

///

///

///

DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter a temporary restraining order to bar Defendants from using in any way Plaintiff's trademark or trade dress, until such a time as this matter can be tried.

Respectfully submitted,

Dated:  April 18, 2025

By:  /s/ Andrew Robert Cowan

Andrew R. Cowan, Esq.
CAMUTI LAW GROUP APC
33 Brookline
Aliso Viejo, CA 92656
andrew@camutilaw.com
Telephone: 949.716.5565

*Attorneys for Plaintiff*

- 15 -

DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains less than 7,000 words, which complies with the word limit or L.R. 11-6.1.


Dated:  April 18, 2025                     By:  /s/ Andrew Robert Cowan

Andrew R. Cowan, Esq.
CAMUTI LAW GROUP APC
33 Brookline
Aliso Viejo, CA 92656
andrew@camutilaw.com
Telephone: 949.716.5565

*Attorneys for Plaintiff*

DINK AND VOLLEY GP'S APPLICATION FOR TEMPORARY RESTRAINING ORDER